### In the Matter of SELBY FARMS, INC.

#### Bankruptcy No. 8101237WC.

United States Bankruptcy Court,
S. D. Mississippi, W. D.

Oct. 7, 1981.

Bernard W. N. Chill, Sr., Jackson, Miss., for Selby Farms, Inc.

. William N. Reed, Jackson, Miss., for Jackson Production Credit Assn.

James W. O'Mara, Jackson, Miss., for Bank of Yazoo City.

John C. Wheeless, Jr., Vicksburg, Miss., for First Nat. Bank of Vicksburg.

Richard T. Bennett, Jackson, Miss., for Jones & Upchurch, Inc.

## OPINION

BARNEY E. EATON, III, Bankruptcy Judge.

This proceeding was commenced by the application of the debtor in possession, Selby Farms, Inc. ("Debtor"), for authority to sell certain timberland and mineral rights free and clear of any interest in such property pursuant to 11 U.S.C. § 363(f). Responsive pleadings were filed by the Bank of Yazoo City ("BYC"), First National Bank of Vicksburg ("First National"), Jackson Production Credit Association ("Production Credit") and by Jones & Upchurch, Inc. ("Jones & Upchurch"). In addition, a Complaint was filed by BYC requesting relief from the automatic stay pursuant to 11 U.S.C. § 362. These two proceedings were consolidated for trial, which was held on July 9th and 10th, 1981.

### I.

1. The Debtor is a corporation whose president is Robert R. Selby. The Debtor owns and operates a farming business in Yazoo and Warren Counties, Mississippi, which has been run by the Selby family for the last three generations. This farm consists of approximately 2,400 farming acres, used primarily for the production of wheat and soybeans, and approximately 1,400 acres of timberland.

2. On May 8, 1981, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and continued operations thereafter as debtor in possession.

3. On June 1, 1981, BYC filed its complaint to lift the automatic stay. BYC holds a validly perfected security interest in a portion of the Debtor's real estate.

4. The Debtor has defaulted in making payments in accordance with the terms of the promissory note and deed of trust held by BYC. The unpaid principal balance, interest payments and other outstanding obligations of the Debtor owed to BYC as of July 9, 1981, result in an aggregate indebtedness of $560,581.77.

5. First National has a second deed of trust on the same lands as BYC. This security interest is subject to the first deed of trust of the Federal Land Bank and is prior to the third deed of trust of BYC. The principal amount outstanding on the Federal Land Bank's debt is approximately $2,183,000. The principal amount outstanding on First National's debt as of July 9, 1981 is $945,877.95.

6. The Debtor seeks to sell free and clear of all liens certain mineral rights to the Allar Company ("Allar") for the sum of $212,730 and certain timberland to the Masonite Corporation ("Masonite") for the sum of $930,187.50, and to use the proceeds derived from those two sales to pay certain creditors, including certain lienholders on the property. Several objections to that request were filed, objecting to the sale itself and to the proposed distribution of the proceeds.

7. Houston Evans, an expert appraiser, valued the property, subject to the lien of the Federal Land Bank, First National and BYC, excluding the property to be sold to Masonite and Allar, at approximately $2,600,000.

8. The outstanding obligations of the Debtor, owed to the Federal Land Bank, First National and BYC, amounts to approximately $3,689,000.

### II.

A. Complaint to Lift the Automatic Stay.

Bankruptcy Code Section 362(a) stays any act to enforce a lien against the property of the debtor. The legislative history on this section provides as follows:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stays all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." House Re-

374

port No. 95–595, 95th Cong. 1st Sess. 340 (1977); Senate Report No. 95–989, 95th Cong. 2d Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 6296.

The grounds for relief from the automatic stay are set forth in Section 362(d), which states:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1). for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an[y] equity in such property; and

(B) such property is not necessary to an effective reorganization."

Section 362(g) sets forth the allocation of the burden of proof as follows:

"In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues."

BYC has asserted a lack of adequate protection of its interest in the property as grounds for relief from the stay.

■ If the Court were to lift the automatic stay in this cause, the Debtor's priority and unsecured creditors would have no opportunity to receive any portion of their debts from the Debtor and the Debtor would be deprived of the opportunity to attempt a repayment or reorganization plan. "Such a harsh result at this early stage of this administration would be grossly inequitable and contrary to the remedial aspects of Chapter 11 of the Bankruptcy Code." *In Re First Century Trust Co.,* 12 B.R. 204, 208 (Bkrtcy.W.D.Tenn.1981).

In order for the stay to remain in effect, however, the Court must conclude that BYC is currently adequately protected. Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code. Instead Section 361 offers three non-exclusive methods of providing adequate protection. Providing periodic cash payments, a replacement lien or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property" are the methods suggested.

In order to provide adequate protection, the Court will require the Debtor to pay the sum of $275,000 to Federal Land Bank, the sum of $325,395.70 to First National, and the sum of $181,395.69 to BYC. In addition, First National and BYC shall have a replacement lien on the entire soybean crop planted by the Debtor in 1981. This lien shall be junior only to the previous lien granted by this Court to the Farmers Home Administration in the amount of $211,000. First National shall receive 65% of the proceeds from the sale of this soybean crop and BYC shall receive the remaining 35% of the proceeds. Accordingly, the Court concludes that BYC is adequately protected and that relief from the automatic stay pursuant to Section 362(d)(2) should not be granted.

Although relief from the stay is being denied at this time, the Court will review the Debtor's crop results and farming progress on December 15, 1981, and review the feasibility of the Debtor's reorganization and the ability of the Debtor to adequately protect BYC.

B.   Sale of Property of the Estate Under Section 363(b), (f).

Section 363(b) states:

"The trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."

Section 363(e) provides that the Court shall prohibit or condition such sale as is necessary to provide adequate protection.

Section 363(f) provides that the trustee may sell property free and clear of any interest in such property of an entity other than the estate if such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 1107(a) provides that the debtor in possession shall have all the rights and powers of a trustee, other than the right to compensation under Section 330.

The power of the Bankruptcy Court to sell property free and clear of liens has long been recognized. *Van Huffel v. Harkelrode*, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931). "The Bankruptcy Court, may, in the best interest of administering the estate, sell the [Debtor's] property free of all claims, liens, and encumbrances if the property to be sold was in the actual or constructive possession of the [Debtor]." *In Re Wiltse Brothers Corporation*, 361 F.2d 295 (6th Cir. 1966).

█ The proposed sale is in the best interest of the administration of this estate and the estate's creditors because the estate needs an influx of cash in order to continue its farming operation and to begin an orderly reduction of its debts. Accordingly, the Debtor should be allowed to hold $235,000 as working capital from the proceeds of the proposed sale in order to cover the Debtor's 1981 farming expenses. Furthermore, the Debtor would not be able to continue farming without the equipment subject to Allis-Chalmer's lien. Because an effective reorganization is contingent upon the continuation of the farming operations, the Debtor should be permitted to pay Allis-Chalmers from the proceeds of the proposed sale the sum of $22,848 for the continued use of this essential equipment.

In connection with the sale of the timberland to Masonite, the Debtor used the services of a broker, Jones & Upchurch, and agreed to pay a commission of ten percent or $93,018.75. Jones & Upchurch performed all of the terms and conditions of the contract with the Debtor by producing a buyer, Masonite, who was ready, willing, and able to purchase the timberland. In reliance on the contract, Jones & Upchurch performed many services and incurred considerable expenses by finding a buyer and entering into a buy-sell agreement with Masonite. Therefore, because this sale is crucial to the reorganization of the Debtor and because Jones & Upchurch met the conditions of the contract, the Court finds that the sum of $60,000, a reasonable and equitable real estate commission, should be paid to Jones & Upchurch from the proceeds of the proposed sale.

To continue the orderly reduction of the Debtor's obligations and to stop the accumulation of interest and penalties, the Court is of the opinion that the Debtor should be permitted to pay Mississippi State Tax Commission the sum of $13,278.11 from the proceeds of the sale.

Finally, the Court concludes that the payment of legal fees to Chill, Chill & Dove is necessary in order for the Debtor to have legal counsel during this reorganization. At this time, this payment of legal fees can come only from the proceeds of the proposed sale.

BYC and First National are adequately protected by the remaining property that is subject to their security interest, by the cash payments to be made to them from the proceeds of the sale to Masonite and Allar, and by the lien granted BYC and First National on the Debtor's entire soybean crop for 1981. Further, adequate protection is provided to Production Credit by the remaining property subject to its security interest and not subject to the sale.

### III.

"Harmonizing the correlative interests of the secured party with the Debtor and unsecured creditors is a continuing struggle in the reorganization process. A balance of the countervailing and competing interest is, to say the least, a delicate and serious matter. The harm to the plaintiff (secured creditor) should be balanced against the needs of the Debtor and the interests of the unsecured creditors." *In Re First Century Trust Co., supra.*

11 U.S.C. Section 105(a) provides as follows:

"The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Having considered and balanced the interests of the secured parties with the interests of the Debtor and unsecured creditors, and pursuant to the provisions of 11 U.S.C. § 362(d), § 363(f) and § 105(a) and equitable principals under 28 U.S.C. § 1481, the Court finds (1) that BYC's complaint to lift the stay is denied until December 15, 1981, at which time the Court shall review the Debtor's ability to effectively reorganize and the Debtor's ability to provide adequate protection, and (2) that the sale of certain real property and mineral interests should be granted in accordance with this Court's Order of July 14, 1981.