**In re THE HUNNINGTON GROUP, INC., Debtor.**

**Bankruptcy No. 90–04146–H3–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Sept. 11, 1990.

Marilee A. Madan, Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, Houston, Tex., for debtor.

Samuel D. Hinkle, IV, Greenbaum, Boone, Treitz, Maggiolo & Brown, Louisville, Ky., for The Cumberland Federal Sav. Bank.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER OF ADEQUATE PROTECTION REGARDING DEBTOR'S MOTION TO SELL CERTAIN REAL PROPERTY TO McDONALD'S CORPORATION

### Findings of Fact

Came on for hearing on August 15, 1990 Debtor's Emergency Motion to Sell Real Property to McDonald's Corporation. At the conclusion of the hearing, the opposing parties, Debtor and The Cumberland Federal Savings Bank, were asked to brief certain issues, all briefing to be concluded by August 24, 1990. They have done so. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

1. Debtor filed Bankruptcy June 13, 1990. Debtor is a corporation incorporated in the State of Texas which engages in the purchase, development and sale of real property. Debtor at present holds two such projects, a relatively small one in Texas, and a large one in Kentucky.

2. This court has heard a Motion by the largest secured creditor, The Cumberland Federal Savings Bank, for transfer of venue and from the bench announced Findings of Fact and Conclusions of Law as to that Motion whereby the Bankruptcy Court for the Southern District of Texas recommends to the United States District Court for the Southern District of Texas, that this Bankruptcy case be transferred to the Western District of Kentucky, where virtually all of Debtor's real estate holdings are located. This court takes judicial notice of its Findings of Fact and Conclusions of Law in that recommendation, which recommendation has been reduced to writing and was signed September 9, 1990.

3. The United States District Court for the Southern District of Texas has not yet issued an Order with regard to transfer of venue. Until that time, it is the view of this court that it continues to have the authority to act in this case, (See B.R. 1014), and that it is in the best interest of the Debtor and its creditors that this court do so.

4. The parties before this court at the hearing with regard to the proposed sale to McDonald's are in agreement that the proposed purchase price for a particular parcel in Debtor's development know as Stony

Brook North in Jefferson County, Kentucky, is a fair one, and that the McDonald's Corporation is a good prospective purchaser. The testimony of Debtor's President, Jeffrey Lagow, that having a McDonald's in a development of this sort (multi-use, including a Loew's Cinema Ten) enhances the value of the other sites in the development, was undisputed.

5. Jeffrey Lagow was a credible and competent witness.

6. The differences between the two opposing parties arise over disposition of proceeds from the sale.

7. The Cumberland holds a first lien on sixty percent (60%) of the parcel proposed for sale to McDonald's, and a second lien on forty percent (40%) of the parcel. First Federal Savings and Loan of Paducah, Kentucky holds a first lien on forty percent (40%) of the parcel, and a second lien on sixty percent (60%) of it.

8. Debtor and First Federal have reached an agreement with regard to sale of the parcel. First Federal will release its lien as to that parcel upon payment to First Federal of $125,000.00. (Debtor's EX 14.)

9. Debtor and The Cumberland have no agreement. Debtor proposes to pay The Cumberland $5.60 per square foot, and proposes to make various other payments from the proceeds as well.

10. The additional payments Debtor proposes to make are:

1) payments to real estate brokers involved in the sale;

2) payments to counsel in connection with the closing;

3) payments to an engineer for work related to Seller's contractual covenants;

4) ad valorem real estate taxes;

5) a Mechanic's and Materialmen's lien claim fund; and

6) payments for site work required by purchaser.

(See Debtor's EX 14.)

11. The Cumberland objects to any such payments except "those without which the sale cannot be closed." The Cumberland contends that applicable Bankruptcy law protects it from having to bear any other charges, pursuant to 11 U.S.C. § 363.

12. The Cumberland believes its lien to be superior to that of any Mechanic's and Materialmen's lien, and therefore that no payments should be made on the Mechanic's and Materialmen's lien until The Cumberland has been paid in full.

13. Whether The Cumberland's lien is superior to any Mechanic's and Materialmen's claimants will be determined with reference to Kentucky law. Not only is the real property located in Kentucky, but also the choice of law provisions in the contracts between the opposing parties call for application of Kentucky law.

14. The business of the Debtor involves sales of parcels of real property. Each time the Debtor desires to sell a parcel, where some of the parties disagree as to distribution of proceeds, a determination of distribution of proceeds will have to be made by the Bankruptcy Court handling the case. This will involve, in part, application of Kentucky law as it relates to Mechanic's and Materialmen's liens and to contracts between Debtor and its lienholders.

15. The Cumberland contends that it is entitled to sixty percent (60%) of the net proceeds of the sale and that no portion of the proceeds should be paid until their first lien is paid.

16. There is a dispute between the parties as to the nature of an equity position that The Cumberland has in the development. The agreement between the parties creating this equity position is to be interpreted in accordance with Kentucky law.

17. With regard to release of property to be sold, the Development Loan Agreement between Debtor and The Cumberland provide The Cumberland is to receive the greater of one hundred percent (100%) of "net sales price" or one hundred fifteen percent (115%) of the value of the sales property as set forth on Annex I. Annex I provides for not less than $5.60 per square foot for inner lots, and $7.00 per square foot for "out parcels." (See Debtor's EX 18.)

18. This court finds that the parcel at issue is an out parcel.

19. David Hogan of Galloway Appraisal Company, an independent appraisal firm located in Louisville, Kentucky, testified concerning the value of the property. He testified that the fair market value of the property ranged from $12.50 to $12.75 per square foot and that the sale price (calculated to be approximately $12.40 per square foot) offered by McDonald's appeared to be near the appraised value.

20. The Cumberland will retain its first lien position on the remaining acreage of Stony Brook North (approximately 69 acres) which the unrefuted testimony of David Hogan, the duly qualified appraiser, determined to be in excess of $12,000,000.00. The Stony Brook North development loan balance is less than $6,000,000.00.

21. The Cumberland will also retain its first lien position in the approximately 292 acre tract known as Stony Brook South. The undisputed testimony of David Hogan, a duly qualified appraiser, valued the Stony Brook South acreage subject to The Cumberland's lien in excess of $21,000,000.00. The Stony Brook South development loan balance is less than $10,000,000.00.

## Conclusions of Law

1. The Cumberland is not entitled to sixty percent (60%) of the proceeds from the sale. Debtor, as a debtor-in-possession, in the early stages of its Bankruptcy case, and with a substantial chance of reorganization in the hands of a competent manager, which this court finds Jeffrey Lagow, Debtor's President, to be, is entitled to make use of some of the proceeds of the sale, provided that the lienholders are adequately protected. 11 U.S.C. §§ 363(e), 361; See *Matter of Selby Farms, Inc.*, 15 B.R. 372 (Bankr.S.D.Miss.1981)

2. Debtor may sell the property free and clear to McDonald's at the price cited in the Motion, $663,214.00, with the following payments being allowed as costs of the sale:

1) sales commission of approximately six percent (6%) to real estate agents, in the amount of $39,795.00;

2) attorneys fees for Debtor's closing counsel, in the amount of $5,000.00;

3) fees for site work to be performed by seller in accordance with seller's contractual covenants, in the amount of $55,000.00; and

4) ad valorem taxes, if the authorities asserting ad valorem taxes will accept the Debtor's proposed $6,000.00 payment as payment in full. Otherwise, the amount for taxes shall be deposited into an escrow fund pending further determination by a court of competent jurisdiction. (See Debtors EX 14.)

3. The sale will be conditioned upon:

1) Debtor's paying $7.00 per square foot to The Cumberland;

2) payment of $125,000.00 to First Federal; and

3) the creation of an escrow fund which will consist of those funds (approximately $11,000.00) set aside for Mechanic's and Materialmen's claimants and any tax amounts not distributed.

4. The remainder of the sales proceeds will go to Debtor for its own use.

5. This court finds that The Cumberland is adequately protected, in accordance with 11 U.S.C. § 363, as a result of The Cumberland's being paid $7.00 per square foot, in addition to its security interest on the remaining property. See *Selby Farms*, 15 B.R. 372.

6. It will remain for a court of competent jurisdiction to construe Kentucky law as it relates to Mechanic's and Materialmen's liens and the equity position of The Cumberland, to determine the distribution of the escrowed remainder of the proceeds where, as here, the lienholder does not consent to the use of the proceeds. Thus, distribution to Mechanic's and Materialmen's claimants and any further distribution to The Cumberland based on its equity position, will await further determination by that court, and will be payable, if so determined by that court, from the escrow fund hereby to be created.

Pursuant to and in accordance with the above Findings of Fact and Conclusions of Law, the court grants the Debtor's Motion to Sell conditioned upon compliance with the provisions above. A separate Judgment will be entered by the court pursuant to the court's Findings of Fact and Conclusions of Law.