**In re FIRST CENTURY TRUST COMPANY, Debtor.**

**Sylvania GUASCO, Plaintiff,**

**v.**

**FIRST CENTURY TRUST COMPANY, Defendant.**

**Bankruptcy No. 81–21429.
Adv. No. 81–0865.**

United States Bankruptcy Court,
W. D. Tennessee, W. D.

May 8, 1981.

William M. Walsh, Memphis, Tenn., for plaintiff.

David C. Doten, Jr., Memphis, Tenn., for defendant-debtor.

## MEMORANDUM ORDER RE "COMPLAINT TO SET ASIDE STAY; TO ALLOW FORECLOSURE; TO RATIFY FORECLOSURE SALE" FILED BY PLAINTIFF, SYLVANIA GUASCO

DAVID S. KENNEDY, Bankruptcy Judge.

This adversary proceeding is before the Court upon the "Complaint To Set Aside Stay; To Allow Foreclosure; To Ratify Foreclosure" filed by the plaintiff, Sylvania Guasco, seeking (1) an order from this Court lifting the automatic stay provisions contained in 11 U.S.C. Section 362(a) to permit the plaintiff to "complete" a certain real property foreclosure action which was pending at the time of the commencement of the instant Chapter 11 case and (2) an order ratifying and affirming a limited and restricted foreclosure sale.

Upon consideration of the evidence presented at the "preliminary hearing" held, pursuant to 11 U.S.C. Section 362(e), on May 6, 1981, the argument of counsel and the entire record herein, the Court makes the following findings:

On April 27, 1981, the defendant, the above-named debtor, First Century Trust Company ("Debtor"), filed a petition under Chapter 11 of the Bankruptcy Reform Act of 1978. The Section 341(a) meeting of creditors is scheduled for May 20, 1981, at 10:00 A.M.

Debtor, as a partnership entity, came into legal existence in early 1979, for the primary purpose of acquiring rental properties.

On or about July 6, 1979, the plaintiff sold seven (7) duplexes located in Memphis, Shelby County, Tennessee, to the Debtor, who assumed an existing first mortgage in the approximate (present) amount of $63,000.00. Plaintiff retained a second mortgage on the seven (7) duplexes to secure the purchase price from the Debtor. Plaintiff's note from the Debtor was approximately $20,000.00. The total purchase price was approximately $100,000.00; and the Debtor assumed the existing first mortgage and three (3) years back taxes.

Debtor proceeded to and did rehabilitate the seven (7) duplexes in varying degrees. Frank J. Steed, a 50% general partner of the Debtor, orally testified (without supporting documentation) that approximately $25,000.00 was expended from non-Debtor funds to rehabilitate the seven (7) duplexes, after the Debtor acquired its ownership interest.

In early 1980, the plaintiff instituted foreclosure proceedings against the Debtor's seven (7) duplexes, whereupon the Debtor filed a Chapter 11 petition. Subsequently, the parties, including the first mortgagee, entered into an agreement providing, inter alia, that the first mortgagee would take into possession all rentals and disburse same in accordance with that agreement. Debtor then dismissed the Chapter 11 case.

On or about September 19, 1980, the Debtor sold four (4) of the seven (7) duplexes to B & S Property Management, a partnership composed of G. T. Bell and Robert Shackelford, for $93,000.00, pursuant to a "wrap-around mortgage" transaction and a $10,000.00 down-payment. There is presently owing to the Debtor approximately $82,000.00, which is being paid by B & S Property Management at the monthly rate of $828.67. The monthly note payments from the B & S Property Management are being forwarded to the first mortgagee, who also continues to receive the rental proceeds from the Debtor's remaining three (3) duplexes. The first mortgagee disburses the funds according to an agreement of the parties. Subsequently, the plaintiff instituted a second foreclosure action whereupon the Debtor filed, on or about February 4, 1981, a complaint in the Shelby County Chancery Court, seeking to enjoin the foreclosure action. On or about March 18, 1981, the Chancery Court dismissed the Debtor's complaint for injunction, whereupon the plaintiff instituted a third foreclosure action which was scheduled to take place on April 28, 1981, at 12:00 o'clock noon.

On April 27, 1981, the Debtor filed the instant Chapter 11 case, which triggered the automatic stay provisions of 11 U.S.C. Section 362(a)[1] and enjoined the plaintiff's foreclosure sale scheduled for the next day.

At approximately 11:15 A.M. on April 28, 1981, the Substitute Indenture Trustee appeared in open Court and orally requested that he be authorized to proceed with the pending foreclosure action. This Court orally authorized, in open Court, a limited and restricted lifting of the automatic stay to permit the Substitute Indenture Trustee to accept bids at the scheduled foreclosure sale; however, no deeds were to be recorded, etc. pending further orders of this Court and the filing of a formal complaint by the plaintiff, pursuant to 11 U.S.C. Section 362(d), seeking a lifting of the stay to "complete" the foreclosure sale, and a subsequent simultaneous request by the plaintiff to this Court for a ratification and affirmation of the foreclosure sale. Later in the day on April 28, 1981, this Court formally signed an Order, which provided, in pertinent part, as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the automatic stay in this cause is lifted for the limited purpose of allowing the Substitute Trustee's sale to proceed; and *all* other matters are reserved pending further order of this Court."

Pursuant to this Court's oral instructions, the Substitute Indenture Trustee proceeded with the foreclosure sale at noon on April 28, 1981. Debtor was informed by the plaintiff's attorney on April 28, 1981, that the sale would be postponed and adjourned until noon on April 29, 1981, at which time the Substitute Indenture Trustee reopened the sale. The Substitute Indenture Trustee orally announced prior to the foreclosure sale that the sale would be conducted pursuant to the terms and conditions of the Order herein dated April 28, 1981, which Order was read aloud in full. The highest bid for the seven (7) duplexes was in the amount of $20,667.78[2] submitted by Messrs. J. T. Bell and Robert L. Shackelford (who actually made a tender). There being no higher bid, the Substitute Indenture Trustee, closed the sale. (This is the same Messrs. Bell and Shackelford who purchased four (4) of the seven (7) duplexes from the Debtor on September 19, 1980, for $93,-000.00.)

A status conference was held by the Court on Friday, May 1, 1981, and attended by William M. Walsh, Esq., the attorney for the plaintiff; Henry C. Shelton, III, Esq., the attorney for Messrs. Bell and Shackelford, the Substitute Indenture Trustee, James R. Newson, III; and Mr. Frank J. Steed on behalf of the Debtor. The date of May 6, 1981, at 4:00 o'clock P.M. was agreed upon to hear the formal Section 362(d) complaint to be filed by the plaintiff to lift the automatic stay and to ratify and affirm the Substitute Indenture Trustee's sale of April 29, 1981, to Messrs. Bell and Shackelford for $20,667.78 re the seven (7) duplexes. A status quo was to remain in effect pending the outcome of the hearing on May 6, 1981.

On May 1, 1981, the Court entered an "Order And Notice Of Hearing" whereby *all* creditors and interested parties were notified of the expedited hearing to be held on May 6, 1981, to consider the plaintiff's aforesaid requests. Copies of this notice were mailed on May 1, 1981, along with copies of the legal descriptions of the seven (7) duplexes and the "Report Of Substitute Trustee" filed on May 1, 1981.

On May 4, 1981, the plaintiff formally filed the instant complaint which came on

---

1. Pursuant to 28 U.S.C. Section 1471(e), the Bankruptcy Court shall have exclusive jurisdiction of all the Debtor's property, wherever located, as of the commencement of the Chapter 11 case.

2. Plaintiff asserts her debt is as follows:

| | | |
|---|---|---|
| 1. | Principal balance due | $15,891.39 |
| 2. | Fees from first foreclosure | 1,362.50 |
| 3. | Interest due | 591.00 |
| 4. | Abstract of title | 50.00 |
| 5. | Two publications | 772.89 |
| 6. | Attorney's fees and trustee's fees | 2,000.00 |
| | TOTAL: | $20,667.78 |

to be heard [3] on May 6, 1981, at 4:00 o'clock P.M. The hearing lasted over three (3) hours.

Essentially, the sole assets of this estate are (1) the note from Messrs. Bell and Shackelford with an approximate present balance of $83,000.00 (arising out of the "wrap-around mortgage" sale re the four (4) duplexes) and (2) the three (3) remaining duplexes listed in the Debtor's Schedule B–1 herein. The first mortgagee is owed approximately $63,000.00; plaintiff, as second mortgagee, is owed approximately $20,000.00; approximately $4,400.00 is owed in real estate taxes; and eight (8) unsecured creditors are scheduled as being owed $7,672.50.

By agreement, the plaintiff introduced an ex-parte appraisal submitted by Mr. Joe Pickering which reflects that the aggregate value of the Debtor's three (3) remaining duplexes is $47,955.00. (By agreement, the Debtor has reserved the right to cross-examine Mr. Pickering at a later time, if it becomes necessary.)

Mr. C. V. Dodd, an M.A.I. appraiser, testified for the Debtor and stated that the aggregate value of the Debtor's three (3) remaining duplexes is $82,000.00. Mr. Terry Martin, a real estate agent and broker, also testified for the Debtor, and stated, based on comparables, that the aggregate "marketable selling price" of the Debtor's three (3) remaining duplexes is $80,500.00.

The first real estate mortgagee is continuing to receive the rental incomes and the monthly note proceeds from Messrs. Bell and Shackelford, as well as the rental incomes from the Debtor's three (3) remaining duplexes. The properties are adequately insured and are absolutely essential, vital and necessary to an effective reorganization and for benefit of the Debtor and its priority and unsecured creditors.

11 U.S.C. Section 362(a) provides for an automatic stay against certain judicial and non-judicial acts against the Debtor, property of the Debtor, or property of the estate. The stay arises automatically upon the filing of a petition by or against the Debtor without the necessity of a request by any party in interest. Specifically, the foregoing subsections of Section 362(a) are relevant:

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

"(3) any act to obtain possession of property or the estate or of property from the estate; (Emphasis added)

"(4) any act to create, perfect, or enforce any lien against property of the estate;

"(5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

"(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title against any claim against the debtor."

The Historical and Revision Notes provide as follows:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. *It gives the debtor a breathing spell from his creditors.* It stops all collection efforts, all harassment, and all foreclosure actions. *It permits the debtor to attempt a repayment or organization plan,* or simply to be relieved of the financial pressures that drove him into bankruptcy." (Emphasis added)

---

**3.** By consent, the attorney for Messrs. Bell and Shackelford was permitted to participate at this hearing. The attorney announced, inter alia, that his clients bid in the seven (7) duplexes for $20,667.78 and that in his opinion, the foreclosure, if ratified and affirmed, may extinguish the underlying debt owed by Messrs. Bell and Shackelford to the Debtor, which note has a present balance owed of approximately $83,-000.00. Quite naturally, Messrs. Bell and Shackelford were anxious to have the foreclosure sale approved.

See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 340; Senate Report No. 95–989, 95th Cong.2d Sess. (1978) 54, U.S. Code Cong. & Admin.News 1978 at 5840.

Section 362(d) sets forth the circumstances upon which the Court may grant relief from the automatic stay and provides as follows:

"On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) *for cause, including the lack of adequate protection* of an interest in property or such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; *and*

(B) such property is not necessary to an effective reorganization." (Emphasis added.)

█ If a party seeks relief only with respect to an act against property, relief may be given if the debtor has no equity in the property *and* the property is not necessary to an effective reorganization. See Section 362(d)(2); *Heritage Savings & Loan Ass'n v. Rogers Development Corp.*, 2 B.R. 676 (Bkrtcy.E.D.Va.1980) (relief from automatic stay denied even though property had no equity because property was necessary for an effective reorganization). The party seeking relief has the burden of proof on the issue of the debtor's equity in the property and the party opposing the relief has the burden on all other issues. See Section 362(g).

█ The "adequate protection" required under 11 U.S.C. Section 362(d) may take many forms, only some of which are illustrated in 11 U.S.C. Section 361. E. g., (1) where the collateral consists of rents from real estate, adequate protection, at least for an interim period, may consist of a requirement that some portion or all the rents be applied in a certain manner, perhaps to pay taxes or other senior liens or to pay interest. 2 *Collier On Bankruptcy,* Para. 361.01 (15th Ed. 1979); (2) periodic cash payments to compensate for a decrease in value of property. 11 U.S.C. Section 361(1); (3) additional or replacement security to compensate for a decrease in value of property. 11 U.S.C. Section 361(2); (4) an "equity cushion" in the properties. 2 *Collier On Bankruptcy,* Para. 361.01 (15th Ed. 1979). At the present time in the instant case, adequate protection, as contemplated in the Bankruptcy Reform Act of 1978, exists.

█ Harmonizing the correlative interests of the secured party with the debtor and unsecured creditors is a continuing struggle in the reorganization process. A balance of the countervailing and competing interests is, to say the least, a delicate and serious matter. The harm to the plaintiff (secured creditor) should be balanced against the needs of the Debtor and the interests of the unsecured creditors.

11 U.S.C. Section 105(a) provides as follows:

"The Bankruptcy Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

█ If the Court were to lift the automatic stay in the instant case to permit a "completion" of the foreclosure action and ratify and affirm the foreclosure sale to Messrs. Bell and Shackelford for $20,667.78 and assuming, as suggested, by the attorney for Messrs. Bell and Shackelford that the foreclosure sale would extinguish the balance of approximately $83,000.00 owed on the note held by the Debtor for B & S Property Management, the Debtor's priority and unsecured creditors would have no opportunity to receive any portion of their debts from the Debtor and the Debtor would be deprived of the opportunity to attempt a repayment or reorganization plan. Such a harsh result at this early stage of this administration would be grossly inequitable and contrary to the remedial aspects of Chapter 11 of the Bankruptcy Code (although the Court will not tolerate any unjustified delays from the Debtor in the administration of this case).

Based on all the foregoing, under a totality of the particular and unique facts and circumstances and pursuant to the provision of 11 U.S.C. Sections 362(d) and 105(a) and equitable principles under 28 U.S.C. Section 1481, the Court finds (1) that the plaintiff's request to ratify and affirm the Substitute Indenture Trustee's foreclosure sale should be denied and (2) the plaintiff's complaint to lift the stay is preliminarily denied and a final hearing is to be set, as the Debtor has shown a "reasonable likelihood" that it will prevail at the final hearing, as contemplated in 11 U.S.C. Section 362(e)(1).

IT IS ORDERED, ADJUDGED AND DECREED:

1. That the plaintiff's request to ratify, affirm and approve the bid received by the Substitute Indenture Trustee at the foreclosure sale from Messrs. Bell and Shackelford for $20,667.78 be and it is hereby denied.

2. That the plaintiff's request to lift the Section 362(a) automatic stay provisions be and it is hereby preliminarily denied.

3. That a final hearing, as contemplated in 11 U.S.C. Section 362(e)(2), will be held on the plaintiff's complaint to lift the stay, pursuant to 11 U.S.C. Section 362(d), on June 2, 1981, at 1:30 o'clock P.M. in Room 1114, United States Courthouse, 167 North Main Street, Memphis, Tennessee.

4. That the automatic stay provisions of 11 U.S.C. Section 362(a) shall continue in full force and effect pending the outcome of the final hearing referred to in Clause 3 above.