In re Wayne Francis BESLER and
Barbara Joan Besler, Debtors.

Wayne Francis BESLER and Barbara
Joan Besler, Plaintiffs,

v.

NORTHWEST PRODUCTION CREDIT
ASSOCIATION (P.C.A.), Lemmon,
South Dakota, Defendant.

NORTHWEST PRODUCTION CREDIT
ASSOCIATION (P.C.A.), Lemmon,
South Dakota, Plaintiff,

v.

Wayne Francis BESLER and Barbara
Joan Besler, Defendants.

Bankruptcy No. 582–00015.
Adv. Nos. 582–0019, 582–0021.

United States Bankruptcy Court,
D. South Dakota.

April 30, 1982.

James P. Hurley, Bangs, McCullen, But-
ler, Foye & Simmons, Rapid City, S. D., for
Beslers.

Robert M. Nash, Wilson, Bottum, Olson,
Goodsell & Nash, P.C., Rapid City, S. D.,

Ronald R. Johnson, Johnson & Kelley, Lemmon, S. D., for PCA.

## MEMORANDUM DECISION

### PEDER K. ECKER, Bankruptcy Judge.

On February 2, 1982, Wayne and Barbara Besler ("Debtors"), owners and operators of a large farming and ranching operation at Bison, South Dakota, filed a petition under Chapter 11 of the Code. On February 9, 1982, the Court held an emergency hearing pursuant to 11 U.S.C. § 102 and, under 11 U.S.C. § 105, authorized Debtors to use the proceeds from the sale of cull cattle in the ordinary course of business to preserve the assets of the estate by purchasing feed for the remaining herd and paying other necessary expenses of continuing operations. The cattle sold were collateral of the Northwest Production Credit Association of Lemmon, South Dakota ("PCA"). The Court required an accounting of use of the proceeds and also required Debtors to bring on a complaint for the use of cash collateral of a secured creditor. On February 19, 1982, Debtors brought this action for authorization to sell property of the estate and use the cash collateral under 11 U.S.C. § 363 and for authorization to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien under 11 U.S.C. § 364(d). The time for answer and hearing was shortened to February 24, 1982. An answer and counterclaim for relief from the automatic stay under 11 U.S.C. § 362(d) and a motion to dismiss under 11 U.S.C. § 1112(b) were filed by PCA on February 22, 1982. By agreement of the parties at the preliminary hearing held February 24 and 25, 1982, the pleadings were consolidated, and the Court heard the evidence presented by both parties. By agreement of the parties, the record was held open to receive further evidence consisting of a valuation of Debtors' operation as a going concern.

Debtors allege that their reorganization cannot continue without the use of the cash collateral, and that PCA is adequately protected by the transfer of the security interest in the livestock to other real estate, machinery, and equipment of the estate and additional property of Debtors' sons. Debtors further allege that they have a reasonable possibility of reorganizing under Chapter 11.

PCA answers and alleges that Debtors have no equity in the mortgaged property and that PCA has not been offered and does not have adequate protection for its interest in the property. PCA further alleges that Debtors have no reasonable prospect for reorganization. It claims that if the automatic stay is not modified to permit foreclosure, it will suffer irreparable injury, loss, and damage.

Debtors answer by a general denial to all allegations in the PCA complaint and motion.

At a hearing on motion for entry of judgment brought on by PCA on March 24, 1982, the Court heard argument by both parties on the going concern valuation of Debtors' operation. The Court denied the motion for entry of judgment and continued the automatic stay pending formal decision on the complaint.

The pleadings and the evidence adduced at the hearing and trial of the consolidated proceedings held on February 24 and 25, 1982, and on March 24, 1982, and argument of counsel, disclosed the following facts.

## FINDINGS OF FACT

1. Debtors own and operate a family farming and ranching business in Perkins and Harding Counties, South Dakota, which has been run by the Besler family for the last two generations. This operation consists of approximately 15,614 ranching and farming acres, used primarily for cattle production and, to a lesser extent, for the production of small grains.

2. On February 2, 1982, Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continued operations as debtors in possession.

3. On February 5, 1982, Debtors requested an emergency hearing for authorization to spend the proceeds from the sale

of 350 cull cows and 5 cull bulls in the ordinary course of business for the preservation of the remaining herd. PCA holds a validly perfected security interest in Debtors' entire herd, and such security interest is transferred to the cash collateral upon the sale of any cattle. Upon findings that PCA had received telephonic notice of the emergency hearing and that a shortage of feed and severe winter conditions required immediate action to preserve property of the estate in the form of the remaining herd, this Court ordered the sale proceeds deposited in the First Bank of Lemmon, South Dakota, under the supervision of Debtors' attorney and certified public accountant. In addition to requiring an accounting of the expenditures, the Court required Debtors to file a complaint for use of cash collateral with motion for shortened notice and hearing at Rapid City, South Dakota, on February 24, 1982.

4. On February 19, 1982, Debtors filed their complaint for sale of property and use of cash collateral and authorization for obtaining credit by incurring debt secured by a senior lien on property of the estate subject to a lien.

5. On February 22, 1982, PCA filed its answer, complaint to modify the stay, and motion to dismiss Debtors' Chapter 11 petition. In addition to its secured position in the livestock, PCA holds a validly perfected security interest in a portion of Debtors' real estate, all of Debtors' machinery, equipment and vehicles, and in one of Debtors' life insurance policies.

6. Debtors have defaulted in making payments to PCA in accordance with the terms of the promissory notes and mortgage deed. The unpaid principal balance, interest payments, and feed disbursements obligations Debtors owed PCA on February 2, 1982, are in an aggregate indebtedness of $2,869,109. Under 11 U.S.C. § 502(b)(2), no further interest accrues to PCA because of its undersecured position.

7. PCA has a first mortgage on Debtors' one-third interest in property referred to as the "Erickson Place," a second mortgage subject to a contract for deed on the property referred to as the "Lei Pasture," and a fourth mortgage on the property referred to as the "Home Place."

8. The Federal Land Bank of Omaha has a first mortgage on the Home Place. The Farmers Home Administration has a second mortgage on the Home Place. The Small Business Administration has a third mortgage on the Home Place. Debtors are in default on each of the loans. The principal amount outstanding plus accrued interest as of February 24, 1982, is $837,998. on the Federal Land Bank's debt, $854,884. on the Farmers Home Administration's debt, and $516,875. on the Small Business Administration's debt. In accordance with 11 U.S.C. § 506(b), the Federal Land Bank, the Farmers Home Administration, and the Small Business Administration are entitled to interest on their secured claims from the date of the filing of the Chapter 11 petition. There is no dispute as to priority of the mortgage liens; the fourth mortgage of PCA is subject to the three prior mortgages.

9. Debtors purchased the Lei land on a contract for deed and are in default under the terms of payment on the contract. The unpaid principal balance and interest accruals owing the sellers as of February 24, 1982, result in a liability of $120,893. This security interest is prior to the mortgage held by PCA on the Lei land.

10. Debtors seek authorization for the use of cash collateral from the sale of 400 calves at an approximate sales price totaling $144,000. PCA objects to this request for use of cash collateral for operating expense in furtherance of reorganizing Debtors' farming and ranching operation.

11. PCA requests dismissal of Debtors' petition or, in the alternative, relief from the automatic stay permitting foreclosure. PCA seeks adequate protection if it is not granted relief from the automatic stay nor granted the dismissal of Debtors' petition. PCA also requests the appointment of a trustee or examiner.

12. At the request of PCA, the Court ordered an appraisal. John I. Widdoss ap-

praised the real property and improvements on behalf of PCA. Lyle F. Martin appraised the same property at the request of Debtors. PCA's appraiser was credible and realistic as to what a willing buyer would pay for this property based upon his knowledge on comparable sales. Accordingly, after adding an additional twenty acres not originally appraised by Widdoss and minor additional improvements, the real property and improvements are found to be worth $3,069,445. based on the highest and best use as a commercial livestock and grain operation. Michael P. Madden, President of Madden Livestock Exchange, appraised the livestock. PCA did not object to the Madden appraisal. The valuation of all other assets of Debtors is established by testimony and evidence presented by and through Debtor Wayne Besler and Rodney L. Horn, President of PCA. Casey Peterson and Associates, a firm of certified public accountants, prepared the going concern valuation of Debtors' ranching and farming business. The approximate value of Debtors' assets is $4,592,412., plus the going concern valuation of $161,335. equals $4,753,747.

13. The approximate outstanding obligations of Debtors amount to $5,306,854.

14. Debtors lack equity in the operation.

15. The liquidation value of the real estate and improvements at a twenty per cent reduction of the fair market value is approximately $2,458,000.

16. There is a likelihood that there will be an effective reorganization. After less than one month since the filing of the petition under Chapter 11, Debtors have had no opportunity to file a formal plan of reorganization. The income and expense projections for the year 1982 presented by Debtors at trial and the going concern valuation support this conclusion.

17. PCA is adequately protected. Debtors have offered additional protection against its declining interest as the interest on the priority real estate mortgages mount under 11 U.S.C. § 506(b). Debtors offer a lien on the 1982 crops and crop insurance of approximately $160,000. Debtors' two sons are involved in farm and ranch operations separate from Debtors' business, and the equity of approximately $350,000. is offered to PCA to further secure Debtors' indebtedness to PCA. These replacement liens compensate PCA for any decrease in value of its interest in the property. With these replacement liens, PCA will not suffer imminent and irreparable injury from the continuation of the stay.

18. Debtors' property is essential to the reorganization of Debtors. Foreclosure and liquidation of the property would deprive Debtors and other creditors of its going concern value. The application of adequate protection to the facts of this case avoids the trauma of relief from the stay and maintains equilibrium of interests in this reorganization.

## DISCUSSION

The successful rehabilitation and reorganization of Wayne and Barbara Besler's ranch lies not in a liquidation of the real estate and cattle. As victims of a general economic recession and as farmers operating in an agricultural depression, these Debtors are entitled to full consideration of this Court's powers in carrying out the fundamental purpose of reorganization proceedings enabling Debtors to continue operations while also protecting the rights of creditors. Legislating in the interest of the nation, Congress saw fit to pass the Bankruptcy Code because it felt the law necessary for the preservation of the nation. This Court has given it broad and liberal interpretation so as to effect the intent of Congress within constitutional limitations.

CASH COLLATERAL

11 U.S.C. § 363 defines cash collateral as: "(a) In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest."

Debtors sold cull cows and cull bulls in the ordinary course of operating a ranching business. The sale proceeds were deposited in a trust account and expended for

feed and operating expenses of the estate. The security interest held by PCA in the livestock was transferred to the cash collateral and PCA received an accounting for expenditure of the funds. By order of February 5, 1982, the Court concluded the cash collateral funds were necessary for the preservation of the estate and to an effective reorganization of Debtors.

11 U.S.C. § 363(e) requires that the secured creditor receive adequate protection in connection with Debtors' use of the cash collateral and places the burden on Debtors to demonstrate such adequate protection. Debtors have proposed that PCA receive, as and for adequate protection for Debtors' use of cash collateral, additional replacement liens in the form of a crop lien on the 1982 crop and lien on the crop insurance proceeds.

The evidence received by the Court as to the value of $160,000. of the replacement liens proposed by Debtors was, by testimony of Debtor, based on past experience with crop insurance and projected yield and market prices. The evidence presented by PCA through testimony of various witnesses placed the same approximate valuation on the liens. The value of the cash collateral was $101,550. Accordingly, the Court concludes that the additional adequate protection replacement liens on the 1982 crop and crop insurance proposed by Debtors do have sufficient value to secure repayment of any cash collateral used by Debtors.

RELIEF FROM AUTOMATIC STAY

Pursuant to 11 U.S.C. § 362(d), PCA is entitled to relief from stay if PCA demonstrates either:

(a) A lack of adequate protection with respect to the property in which it holds a security interest; or

(b) Debtors have no equity in the property and the property is not needed to effectively reorganize Debtors.

11 U.S.C. § 362(g) sets forth the allocation of the burden of proof as follows: "(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues."

PCA has asserted lack of adequate protection of its interest in the property, lack of Debtors' equity in the property, and that the property is not necessary to effectively reorganize Debtors.

In order for the stay to remain in effect, the Court must conclude that PCA is adequately protected. Adequate protection is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. Congress was aware of the turbulent rivalry of interests in reorganization. It needed a concept which would mediate polarities. But a carefully calibrated concept, subject to brittle construction, could not accommodate the "infinite number of variations possible in dealings between debtors and creditors." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 339 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6295. Adequate protection was requisitioned to meet the "varying circumstances and changing modes of financing." *Id.* It is understood through analysis of the reorganization context and the language of 11 U.S.C. § 362(d).

Adequate protection is interim protection; reorganization, dismissal or liquidation will provide the final relief. During this interim, the policies favoring rehabilitation should not be lightly discarded. *See e.g., Hearings on H.R. 31 and H.R. 32 Before The Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary,* 94th Cong., 1st Sess., Ser. 27, Pt. 1, at 321–322, 490–491 (1975).

With respect to the adequate protection issue under 11 U.S.C. § 362(d)(1), Debtors, through their sons, Brad and Chris, have offered the equity in the sons' separate farm and ranch operations to PCA. Debtors offer a maximum of $350,000. equity in the sons' real property and livestock. The replacement liens would be junior to any existing liens on the property. According to uncontroverted evidence, the existing liens of the Federal Land Bank, the Small Business Administration, the Farmers Home Administration, and Bert Lei on the real property in which the PCA holds junior

liens, interest is accruing at the rate of $461.63 per day under 11 U.S.C. § 506(b). The interest on Debtors' indebtedness to PCA does not accrue after February 2, 1982, pursuant to 11 U.S.C. § 502(b)(2). Therefore, this Court finds that from the date of filing the petition and the effectiveness of the automatic stay until the end of the year, PCA will suffer a dilution of their security position in a maximum amount of approximately $253,000. The Court does not require Debtors to provide PCA with replacement liens in an amount of $253,000. because adequate protection is interim relief until reorganization by confirmation of a plan or, in the event this is not feasible, by dismissal. The Court finds that 180 days' interim relief in an amount of $83,160. in replacement liens will adequately protect PCA's security interest in real estate with prior mortgages which are accruing interest to the loss of PCA. PCA shall have a replacement lien on property of Brad and Chris Besler in an amount of $83,160. This lien shall be junior to existing liens on the property. Accordingly, this Court concludes that PCA is adequately protected and relief from the stay shall not be granted under 11 U.S.C. § 362(d)(1).

The second ground for relief from the automatic stay is if the debtor has no equity in the property and the property is not necessary for effective reorganization, 11 U.S.C. § 362(d)(2). From the evidence on the fair market value of the property, it is not contested that Debtors have no equity in the property. However, PCA must also prove that the property is not necessary for effective reorganization. PCA holds security interests in Debtors' livestock, machinery, equipment, and vehicles, and also in the real property. By alleging that Debtors have no reasonable prospect of effective reorganization under 11 U.S.C. § 362(d)(2)(B), PCA concludes that the property is not necessary for reorganization. The Court has not granted PCA's motion to dismiss the petition and concludes that a farming and ranching operation irrefutably requires livestock, machinery, equipment, and vehicles, and also cropland, grazing land, and alfalfa land in order to effectively reorganize. This is more than an assertion made by Debtors resisting relief from the automatic stay. *In Re Clark Technical Associates, Ltd.*, 9 B.R. 738 (Bkrtcy.Conn.1981). The projected income and expenses for 1982 operations presented by Debtors at the hearing on this matter support a finding by this Court that Debtors have met the burden of proof that an "effective" reorganization is reasonably likely as required by 11 U.S.C. § 362(d)(2)(B) and that Debtors' property in which PCA has a security interest is necessary for the effective reorganization of Debtors' farming and ranching business under 11 U.S.C. § 362(d)(2)(B).

Granting relief from the automatic stay at this early stage of this case would be "grossly inequitable and contrary to the remedial aspects of Chapter 11 of the Bankruptcy Code." *In Re First Century Trust Co.*, 12 B.R. 204, 208 (Bkrtcy.W.D.Tenn. 1981). Based on the evidence, it must be concluded that Debtors have provided PCA with adequate protection of its interest so as to justify a continuance of the automatic stay in this proposed reorganization case filed under Chapter 11. Debtors have also proven that the property is necessary for an effective reorganization, even though having no equity in such property, in furtherance of this Court's continuing the automatic stay.

DISMISSAL

A farmer-debtor cannot be converted from a Chapter 11 to an involuntary Chapter 7 pursuant to 11 U.S.C. §§ 303(a) and 1112(c). In moving to dismiss Debtors' petition, PCA alleges that the continuing loss to and diminution of the estate and the lack of a reasonable likelihood of rehabilitation supports such motion under 11 U.S.C. § 1112(b)(1). The Court has held that there is a reasonable likelihood of an effective reorganization of Debtors. Therefore, no consideration need be given to the "continuing loss" argument of PCA when the inclusive test has been met under 11 U.S.C. § 1112(b)(1). The motion for dismissal is denied by the Court.

OBTAINING CREDIT

 11 U.S.C. § 364(d)(1) provides that the Court may authorize the incurring of secured debt if the debtor is unable to obtain unsecured credit and adequate protection is provided.

The record is uncontroverted that Debtors are unable to obtain unsecured credit. Therefore, the Court authorizes Debtors to provide a replacement lien to PCA pursuant to 11 U.S.C. § 361(2). Such replacement lien shall provide PCA with a lien of $144,-000. in the property of Debtors' sons, Brad and Chris. Such lien shall be junior to existing mortgages. This lien provides PCA adequate protection of its security interest in the 400 calves, which is terminated, and the cattle will be mortgaged with another lender to provide spring planting and tilling and summer and fall harvesting expenses of Debtors.

### CONCLUSIONS OF LAW

1. Debtors have met the burden of proof that they offered PCA adequate protection for use of cash collateral as required by 11 U.S.C. § 362(e).

2. Debtors have met the burden of proof that they offered PCA adequate protection for its security interest as required by 11 U.S.C. § 362(d)(1).

3. PCA has established that Debtors lack equity in the property within the meaning of 11 U.S.C. § 362(d)(2)(A).

4. Debtors have shown that the property is necessary to an effective reorganization as prescribed under 11 U.S.C. § 362(d)(2)(B).

5. PCA is not entitled to relief from the automatic stay imposed under 11 U.S.C. § 362(a) and the automatic stay is continued.

6. Debtors have shown that there is a reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(1) so that the motion to dismiss is denied.

7. Debtors have shown under 11 U.S.C. § 364(d)(1) that they cannot obtain additional credit and that the security interest of PCA in 400 calves will be adequately protected by a replacement lien pursuant to 11 U.S.C. § 361(2), thereby allowing Debtors to obtain other mortgage financing on the cattle in question.

The foregoing shall constitute Findings of Fact and Conclusions of Law of this Court, and Attorney Hurley is directed to submit a proposed order consistent herewith.