In re RICHMOND READY–MIX CORPORATION, Debtor.

Bankruptcy No. 83–01223–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Feb. 15, 1984.

Augustus C. Epps, Jr., Richmond, Va., for creditors' committee.

Benjamin Ackerly, John A. Lucas, Jeffrey L. Tarkenton, Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

These matters came before the Court upon the filing of a motion by the debtor to extend the exclusive periods for filing a plan of reorganization and a motion by the creditors' committee to convert this proceeding to one under Chapter 7 of the Bankruptcy Code. After notice to all creditors and other parties in interest, hearings were held on the respective motions. After careful consideration of the evidence adduced at trial and the legal argument presented by both counsel for the creditors' committee and counsel for the debtor in possession, this Court renders the following opinion.

## STATEMENT OF FACTS

The debtor, Richmond Ready-Mix Corporation, is engaged in the business of selling and transporting ready-mix concrete which consists of a composition of sand, gravel, cement, and water. The debtor stores the sand, gravel, and cement at one location, mixes the final product at that location, and loads it on trucks for delivery. Trucks owned and operated by the debtor then transport the ready-mix concrete to its customers.

In early August of 1983, the equity interests in the debtor were purchased by Mrs. Sarah Davis and her son, Leslie Davis, took over as president. After the failure of an informal workout with creditors, an involuntary petition in bankruptcy was filed against the debtor on August 9, 1983. On September 1, 1983, this Court entered an order for relief under Chapter 7 against the debtor. Upon motion of the debtor, this Court entered an order on September 9, 1983 converting the proceeding from one under Chapter 7 to a proceeding under Chapter 11 of the Bankruptcy Code. An unsecured creditors' committee was formed

by the United States Trustee and counsel for the creditors' committee was appointed by this Court.

On October 20, 1983 the creditors' committee, by counsel, filed a motion for conversion to Chapter 7 pursuant to § 1112(b)(1) of the Bankruptcy Code. A hearing on that motion to convert was held on February 8, 1984. On December 14, 1983 the debtor, by counsel, filed a motion for extension of the debtor's exclusive time to file a plan of reorganization. A hearing on the debtor's motion for extension of exclusive period to file a plan was held on January 30, 1984 and said motion was taken under advisement pending consideration of the creditors' committee's motion for conversion.

Evidence presented at those hearings has established the following facts relevant to this Court's resolution of the motions now pending before it:

1) The debtor's financial difficulties that eventually led to the filing of the involuntary petition in bankruptcy against it were occasioned primarily by the mismanagement of the prior owner of the debtor. The current management of the debtor, led by its president, Leslie G. Davis, has instituted various changes and taken various steps to improve the operations of the company including: a) repair of a substantial portion of the company's equipment, particularly with regard to the debtor's trucks that are essential to transporting the product sold by the debtor; b) the discharge of ineffective employees and the refusal to rehire such employees when the business reopened; c) aggressive activities by the management and employees to bring back old customers and establish new customers even while the company is in bankruptcy (the debtor has acquired approximately thirty new customers since new management took over operation of the debtor); d) the maintenance of Saturday hours to attract business when competitors are not open on Saturdays; and e) reduction of operating overhead by eliminating overtime pay and by the foregoing of salaries by the president and the bookkeeper/owner (Mrs. Davis) of the debtor.

2) During the winter season the ready-mix concrete business is substantially reduced. This fact has been verified by a variety of witnesses and is demonstrated by the loan agreement with one of the secured creditors in this matter which suspends payments on that indebtedness for the months of November, December, January and February.

3) Pursuant to a consent order conditioning rights of debtor entered November 14, 1983, the debtor has filed monthly financial statements with the Court including profit and loss statements and cash flow statements. These statements show a loss for the months of October and December and a profit for the months of September and November. However, as demonstrated by counsel for the creditors' committee, had the debtor paid closer attention to the accrual basis of accounting a more realistic picture of the debtor's financial position would show that the debtor probably incurred a loss in those months where the statements show profit, and that for the four month period, the debtor lost more money than the statements suggest. Moreover, a correction of some erroneous entries pointed out by counsel for the creditors' committee demonstrates that the loss for the four month period is indeed larger than the statements suggest.

4) The unsecured creditors' committee of Richmond Ready-Mix Corporation as appointed by the U.S. Trustee pursuant to 11 U.S.C. § 151102 consists of six members: Joseph X. Rice for Atlantic Cement Company, Inc.; Joseph W. Simon for Coplay Cement Company; R.J. Stengel for Lehigh Portland Cement Company; Everett Noble for West Sand and Gravel Company; Norman E. Hartsel for Firestone Stores; and Wilford H. Ball, III for Ball-Martin Insurance Agency, Inc. Apparently, a meeting of the initial creditors' committee, which consisted of the first four members listed above, was held on September 29, 1983. Affidavits filed with the Court allege that a unanimous decision of the four members was reached to move this Court as soon as possible to convert the debtor's proceeding

to one under Chapter 7. Everett Noble from West Sand & Gravel Company testified, however, that he had no knowledge of this meeting and did not consent to the motion to convert to Chapter 7. The other two members of the committee were appointed at a later time; Mr. Hartsell was appointed on November 1, 1983 and Mr. Ball was appointed on November 30, 1983. The original four were appointed on September 30, 1983.

5) Of the members of the creditors' committee, three members support the motion to convert and three members oppose the motion. The three that support the motion hold in excess of $180,000.00 of unsecured claims, while the other three hold less than $30,000.00 of unsecured claims. The three members of the committee that support the motion to convert were three of the four original creditors that filed the involuntary petition against Richmond Ready-Mix Corporation in August of 1983. In addition to the three members of the creditors' committee who testified in opposition to the motion to convert, an affidavit submitted to the Court demonstrates that at least nine other creditors oppose the motion. Finally, counsel for Princess Taylor, a major secured creditor, represented that Princess Taylor opposed the creditors' committee's motion to convert.

## CONCLUSIONS OF LAW

Pursuant to § 1112(b)(1) the creditors' committee brings a motion to convert the debtor's Chapter 11 proceeding to one of liquidation under Chapter 7. Section 1112(b)(1) provides in pertinent part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; . . . .

Thus, if this Court finds (1) a continuing loss to or diminution of the estate and (2) an absence of a reasonable likelihood of rehabilitation the Court will order that the debtor's Chapter 11 proceeding be converted to one pursuant to Chapter 7. It is important to note two additional preliminary matters. First, that § 1112(b)(1) is in the conjunctive and, therefore, both aspects of the statute must be established. The legislative history of § 1112(b)(1) demonstrates clearly that the Code requires "both factors to be present simultaneously." Senate Report No. 95–989, 95th Cong., 2d sess, 117 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787. Second, although § 1112(b)(1) lists at least nine distinct examples of "cause" for conversion or dismissal, § 1112(b)(1) is the only allegation of cause brought by the creditors' committee. No other ground for cause has been alleged in the creditors' committee's motion nor has counsel for the creditors' committee argued at the hearing on the motion that any other ground for conversion or dismissal exists.

As to whether there is a continuing loss to or diminution of the estate, the evidence adduced by counsel for the creditors' committee has established that when the financial statements of the debtor are examined in proper light there is a continuing loss to the estate. After adjustments for the errors pointed out by the creditors' committee are made to the statements and when the statements are examined with an eye towards the accrual basis of accounting (which gives a more realistic picture of the debtor's profit and loss position) the continuing loss becomes apparent. Since the filing of bankruptcy the debtor has continued to lose money, however, the loss is neither significant nor surprising. From the testimony presented at the hearing it has become clear that the winter months are a very difficult time financially for the ready-mix concrete business and a loss during that season is not unusual if not expected. Moreover, although there is indeed a loss and, therefore, potential detriment to creditors, the loss has not been of staggering proportions. Rather, the total loss over the

four months for which statements have been filed is less than $10,000.00, however, for purposes of conversion or dismissal pursuant to § 1112, this Court must find that a continuing loss to or diminution of the estate exists and, therefore, the first of the two elements of § 1112(b)(1) is established.

The Court must now address whether there is an absence of reasonable likelihood of reorganization of this Chapter 11 debtor. The evidence demonstrates that the primary reason for the debtor's financial difficulties was the result of prior mismanagement. Testimony produced at the hearings, however, demonstrates that although the current management of the debtor may be inexperienced its efforts in beginning to reorganize and reestablish the business of the debtor is admirable. The president of the debtor, Leslie Davis, has put forth substantial effort to improve the major equipment of the business, reduce unnecessary salary expense, solicit new business, reduce the company's other operating overhead, maintain good business relations with existing creditors, resurrect old clients, successfully solicit new customers and reestablish confidence with a majority of creditors as well as serving the debtor at no salary to himself. Moreover, Mr. Davis testified that in addition to approximately $3,000.00 in loans to the corporation he has donated to the company $6,000.00 to $7,000.00 by paying for business expenses that otherwise would have to be paid by the debtor. With these facts in mind, this Court concludes that the continuing losses by the debtor over the recent four or five months is mostly a result of the expected seasonal downturn of business in the ready-mix concrete business and not a result of current mismanagement or the inability of this company to be rehabilitated. These facts strongly suggest that with the seasonal upswing in business the debtor will become profitable and will be able to successfully reorganize. At a minimum, these facts establish that there is not an absence of reasonable likelihood of rehabilitation. For these reasons the second factor of § 1112(b)(1) has not been established and, therefore, this Court will deny the creditors' committee's motion to convert this proceeding to one under Chapter 7 of the Bankruptcy Code.

Policy considerations underlying the Bankruptcy Code, particularly Chapter 11, as well as case law with regard to conversion or dismissal supports this Court's conclusion herein. Nothing could be more axiomatic in bankruptcy than that relief under Chapter 11 is provided to give a debtor an opportunity to reorganize its affairs in order to establish a profitable enterprise. In the instant case, the debtor has not to date had a reasonable opportunity to demonstrate that the efforts previously made to reorganize and rehabilitate the debtor will prove successful. Rather, the debtor has been forced to reorganize during the worst business cycle for the ready-mix concrete business. During the various hearings already held in this case one fact has remained uncontradicted and that is that the winter months in the ready-mix concrete business are terribly slow and unprofitable for most if not all businesses involved in ready-mix concrete. Thus, to convert or dismiss this Chapter 11 debtor at this time would frustrate the purposes of Chapter 11 reorganization and would not be in the best interests of the creditors and the estate.

The creditors' committee has not shown that there is no reasonable likelihood of reorganization. All they have shown is that during the winter months the debtor has sustained some losses. Such losses are to be expected and this Court believes that additional time should be granted to the debtor to see if rehabilitation is, in fact, possible. To decide otherwise would frustrate the intention of the drafter's of the Bankruptcy Code. The Bankruptcy Court in the District of Hawaii denied a motion to convert or dismiss despite a current cash shortfall where the debtor anticipated finalizing an agreement in the near future to cure its cash-short position. *In re Ware Spaces*, 5 B.R. 204 (Bkrtcy.D.Haw.1980). Similarly, the debtor in the instant matter has demonstrated that it anticipates curing its cash-short position in the spring months when the ready-mix concrete business improves. Having resurrected prepetition customers

as well as acquiring new customers even in the off-season suggests that when the projected upswing in ready-mix concrete demand occurs in the spring that the debtor in the instant matter may share favorably in the increased business and that rehabilitation is likely or at least at the present moment there is not an absence of reasonable likelihood of rehabilitation. *See In re Besler,* 19 B.R. 879 (Bkrtcy.D.S.D.1982) (no dismissal where debtor demonstrates reasonable likelihood of reorganization).

Finally, an additional basis for denying the motion for conversion by the creditors' committee is that they have failed to carry their burden of proof. As this Court has stated previously, the burden lies with the movant, the creditors' committee in the instant case, where conversion or dismissal is sought pursuant to § 1112. *In re Tolco Properties, Inc.,* 6 B.R. 482, 488 (Bkrtcy.E. D.Va.1980). Although this Court is satisfied that the creditors' committee has established a continuing loss, it has not established that there is an absence of reasonable likelihood of rehabilitation of this debtor and for that reason also the motion to convert must be denied.

Also before the Court at this time is the debtor's motion for extension of the exclusive period for filing a plan of reorganization. A hearing was held on the debtor's motion on January 30, 1984 at which time this Court took the motion under advisement pending the resolution of the motion to convert filed by the creditors' committee of Richmond Ready-Mix Corporation. For the reasons discussed above and due to the fact that certain creditors have persistently sought to liquidate the debtor in the instant matter, this Court finds that an extension of the exclusive period to file a plan is appropriate at this time and will order that the debtor's motion be granted to the extent necessary to provide the debtor with the exclusive right to file a plan until April 1, 1984. At that time the debtor will continue to have a right to file a plan, but, if desired, creditors or other parties in interest may file a plan of reorganization as well.

An order in accordance with this Memorandum Opinion will issue.